UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JENNIFER M. WEESE,

       Plaintiff,

  v.

ANDREW M. SAUL,[1] Commissioner of
 Social Security,

       Defendant.
_____

**DECISION
and
ORDER

18-CV-493F
(consent)**

APPEARANCES:    LAW OFFICES OF KENNETH R. HILLER, PLLC
          Attorneys for Plaintiff
          KENNETH R. HILLER, and
          TIMOTHY HILLER, of Counsel
          6000 North Bailey Avenue, Suite 1A
          Amherst, New York  14226

          JAMES P. KENNEDY, JR.
          UNITED STATES ATTORNEY
          Attorney for Defendant
          Federal Centre
          138 Delaware Avenue
          Buffalo, New York  14202
            and
          VERNON NORWOOD
          Special Assistant United States Attorney, of Counsel
          Social Security Administration
          Office of General Counsel
          26 Federal Plaza – Room 3904
          New York, New York  10278
            and
          MICHAEL ARLEN THOMAS, and
          LAURA RIDGELL BOLTZ
          Special Assistant United States Attorneys, of Counsel
          Social Security Administration
          Office of General Counsel
          1961 Stout Street, Suite 4169
          Denver, Colorado  80294

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On August 5, 2020, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 15).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 5, 2018 (Dkt. 10), and by Defendant on February 4, 2019 (Dkt. 13).

## BACKGROUND

Plaintiff Jennifer M. Weese ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on January 13, 2010, for Social Security Disability Insurance ("SSDI") under Title II of the Act, and for Social Security Supplemental Income ("SSI") under Title XVI of the Act (together, "disability benefits").  Plaintiff alleges she became disabled on September 1, 2008, based on a learning disability, loss of vision in her left eye, and loss of her right eye.  AR[2] at 254, 258.  Plaintiff's applications initially were denied on September 1, 2010, AR at 156-63, and at Plaintiff's timely request, AR at 167-68, on November 8, 2011, a hearing was held in Rochester, New York ("Rochester"), before administrative law judge John P. Costello ("ALJ Costello).  AR at 30-63 ("First Hearing").  Appearing and testifying at the

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on October 4, 2018 (Dkt. 7).

2

First Hearing were Plaintiff, represented by Felice A. Brodsky, Esq ("Brodsky"), and vocational expert ("VE") Julie Andrews ("VE Andrews").

On November 18, 2011, ALJ Costello issued a decision denying Plaintiff's claim, AR at 137-50 ("First ALJ Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 190-94. On June 25, 2013, the Appeals Counsel granted Plaintiff's request for review, AR at 151-55, and, accordingly, a new hearing was held in Rochester on March 25, 2014, over which ALJ Costello again presided. AR at 64-100 ("Second Hearing"). Appearing and testifying at the Second Hearing were Plaintiff, again represented by Brodsky, and VE Carol McManus ("VE McManus").

On June 20, 2014, ALJ Costello issued his decision denying Plaintiff's claim, AR at 7-29 ("Second ALJ Decision"), which Plaintiff timely appealed to the Appeals Counsel. AR at 5-6. On December 10, 2015, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the Second ALJ Decision the Commissioner's final decision at that time. AR at 1-4. On May 23, 2016, Plaintiff commenced a civil action in this court seeking judicial review of the Second ALJ Decision, *Weese v. Colvin*, Dkt. 16-CV-00098-RJA-HBS ("First Civil Action").

On January 31, 2017, Defendant stipulated to remand the matter to the SSA for further administrative proceeding ("stipulation"). First Civil Action, Dkt. 17. By Text Order entered February 3, 2017, the stipulation was approved, the Second ALJ Decision was reversed, and the action remanded to the SSA for further administrative proceedings. First Civil Action, Dkt. 18. Upon remand, the Appeals Council further remanded the matter to a different ALJ for consideration of new material medical

3

evidence and its impact on Plaintiff's maximum residual functional capacity ("RFC").  AR at 607-13.

Accordingly, a new administrative hearing was held in Rochester on October 12, 2017, before ALJ Michael W. Devlin ("ALJ Devlin") ("Third Hearing").  AR at 542-77.  Appearing and testifying at the Third Hearing were Plaintiff represented by Joseph Paladino, Esq. ("Paladino"), and VE Dawn Blythe ("VE Blythe").  On February 6, 2018, ALJ Devlin issued his decision denying Plaintiff's claim, AR at 516-41 ("Third ALJ Decision"), following which Plaintiff commenced the instant action seeking review of the Third ALJ Decision ("Second Civil Action").

On December 5, 2018, Plaintiff moved for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On February 4, 2019, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching The Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings Pursuant to Local Standing Order on Social Security Cases (Dkt. 13-1) ("Defendant's Memorandum").  Filed on February 25, 2019, was Plaintiff's Reply Brief (Dkt. 14) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is remanded for calculation of benefits.

## **FACTS**[3]

Plaintiff Jennifer M. Weese ("Plaintiff" or "Weese"), born December 13, 1985, was 22 years old as of September 1, 2008, her alleged disability onset date ("DOD"), and 32 years old as of February 9, 2018, the date of the ALJ's most recent decision.  AR at 254, 534, 548.  As of the Third Hearing, Plaintiff was married and lived in an apartment with her husband and five children ranging in age from 1 to 12 years old.  AR at 548.  Plaintiff's husband did the cooking and most of the cleaning and took Plaintiff shopping, and the older children helped with cleaning and child care.  AR at 549-50.

Plaintiff suffers from congenital eye disease and never had sight in her right eye which began developing sores and was surgically removed age 8, a condition referred to as an "enucleated eye."  AR at 552.  Plaintiff has congenital cataracts, glaucoma, aphakia (absence of lens), nystagmus (involuntary, repetitive, uncontrolled eye movements), and amblyopia (lazy eye), in her left eye for which the remaining vision is poor and deteriorating, with Plaintiff reporting constant eye pain and light sensitivity.  AR at 388-90, 435-39, 444-45, 467-72, 502, 507-08, 512, 809, 812, 822.  In 2006, Plaintiff commenced treatment with William Cosman, M.D. ("Dr. Cosman"), an ophthalmologist who is Plaintiff's primary care provider with regard to Plaintiff's eye impairment and sees Plaintiff every four months.  AR at 362-87, 444-45, 460-65, 500-05, 507-151, 770, 773-88, 791-801, 805-07, 824-25, 827-29.  Other medical doctors who have treated Plaintiff's eye impairment include ophthalmologists Earlene C. Siebold, M.D. ("Dr. Siebold"), AR at 467-72, 479-505, 771, 809-22, Michael L. Vilardo, M.D. ("Dr. Vilardo"), *id.* at 388, Ralph S. Viola, M.D. ("Dr. Viola"), *id.* at 389-92, 439-43, and James P.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

Sickler, O.D. ("Dr. Sickler"), *id.* at 789-90, 802-03, who was in a medical practice with Dr. Cosman. On March 29, 2012, Plaintiff underwent surgical insertion of a shunt to relieve glaucoma pressure and a scleral patch graft (procedure to repair exposed orbital implant) to cover the shunt on her left eye.[4] AR at 483, 490. Plaintiff's best vision in her left eye is 20/70. AR at 546. Plaintiff's vision impairments are manifested by dry eyes, blurred vision, floaters and lines which interfere with Plaintiff's ability to perform tasks requiring either far or near visual acuity. AR at 546-47, 827-29. Plaintiff's impaired vision interferes with viewing screens such as for a computer or television, AR at 47-48, and Plaintiff is unable to use a cellular phone except for a smartphone which allows Plaintiff to enlarge the screen. AR at 89.

Plaintiff is obese, a condition attributed to medication. AR at 548. It is undisputed that Plaintiff has a borderline intelligence impairment. Plaintiff attended school in special education classes with ninth grade the highest completed. Plaintiff spent three years in tenth grade which she never successfully completed, leaving school at age 18, and never obtaining a GED. AR at 77, 551-52. Plaintiff reads and performs math at the fourth-grade level. AR at 551-52. Plaintiff once had a driver's permit but never obtained a driver's license before the permit expired. AR at 80-81. Plaintiff's deteriorating vision prevented Plaintiff from obtaining another driver's permit. AR at 81.

During a July 22, 2009 consultative psychological examination performed by Christine Ransom, Ph.D. ("Dr. Ransom") in connection with Plaintiff's disability benefits application, Plaintiff was administered the Weschler Adult Intelligence Scale – Fourth

---

[4] Although referenced in the record, it is not clear who performed the surgical implantation of the shunt and graft.

6

Edition ("WAIS-IV") testing which showed full-scale IQ of 71, verbal IQ of 74, perceptual IQ of 77, working memory IQ of 80, and processing speed IQ of 71, placing Plaintiff in the borderline range for intellectual functioning in all areas except working memory which was in the low average range. AR at 418. Also on July 22, 2009, Plaintiff underwent a physical consultative examination performed by Sandra Boehlert, M.D. ("Dr. Boehlert"), who diagnosed Plaintiff with enucleated right eye, markedly impaired farsighted vision in the left eye, scoliosis, psychological disorder, and learning disability. AR at 435-38.

Plaintiff's relevant work experience includes 14 months in maintenance at Wal-Mart. AR at 550-51. When performing her maintenance job, Plaintiff was bothered by burning eyes caused by dust from cleaning, and by lifting more than 10 or 15 pounds. AR at 46-47. Plaintiff maintains she was released from the job in April 2008, after a customer complained that Plaintiff told her she hated her job and because Plaintiff missed too much work due to pregnancy. AR at 41.

At the Third Hearing, VE Blythe was examined both by ALJ Devlin and Mr. Paladino, Plaintiff's attorney. AR at 568-75. Based on hypotheticals posed by ALJ Devlin limiting an individual to "marginal" education level, capable of light exertion, occasionally performing tasks requiring near visual acuity, never performing tasks requiring far visual acuity or right peripheral vision, VE Blythe identified several jobs Plaintiff could perform including room service clerk and ticket taker. *Id.* at 569-71. VE Blythe, in response to questioning by Mr. Paladino, testified Plaintiff would not be able to perform either of the two positions identified if Plaintiff needed to take four to five

unscheduled 15-minute breaks throughout the workday to deal with dry eyes and pain. *Id.* at 575.

## DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.   Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, ALJ Devlin found Plaintiff met the insured status requirement for SSDI through September 30, 2010, AR at 522, has not engaged in substantial gainful activity since September 1, 2008, her alleged disability onset date, *id.*, and suffers from the severe impairments of scoliosis, lumbago, status-post enucleated right eye; marked impaired farsighted vision in the left eye, congenital vision deficit/aniridia in the left eye, glaucoma in the left eye, borderline intellectual functioning, major depressive disorder, and obesity, *id.*, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed

impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 522-25.  Despite her impairments, ALJ Devlin found Plaintiff retains the RFC to perform a light work except that Plaintiff can occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk for six hours in an eight hour day, sit about six hours in an eight hour day, frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, never climb ladders, ropes, and scaffolds, never work at unprotected heights or near moving machinery, never operate motorized vehicles or heavy equipment, never perform tasks requiring far visual acuity (*i.e.*, 20 feet or more), or right peripheral vision, occasionally perform tasks requiring near visual acuity (*i.e.*, 20 inches or less), and understand, remember, and carry out simple instructions and tasks.  *Id.* at 525-32.  Plaintiff has no PRW, yet given Plaintiff's RFC, age, limited education and ability to communicate in English, Plaintiff can perform jobs that exist in significant numbers in the national economy including housekeeping cleaner, room service clerk, and recreation clerk.  *Id.* at 532-34.  Based on these findings, ALJ Devlin determined Plaintiff is not disabled as defined under the Act.  *Id.* at 534.

Plaintiff does not contest ALJ Devlin's findings with regard to the first three steps of the five-step analysis, but argues that at the third step, ALJ Devlin erred by rejecting medical opinions by Dr. Cosman, Plaintiff's treating ophthalmologist, that Plaintiff is totally disabled by her vision impairments, Plaintiff's Memorandum at 15-20, and that ALJ Devlin improperly gave significant weight to Dr. Boehlert's opinion rendered more than seven years prior to the Third Decision and prior to the surgical shunt implantation.  *Id.* at 20-26.  Plaintiff also maintains only remand for calculation of benefits, rather than for further administrative proceedings, is appropriate.  *Id.* at 26.  Defendant argues ALJ

Devlin did not violate the treating physician rule in discounting Dr. Cosman's opinion that Plaintiff is totally disabled based on her impaired vision, Defendant's Memorandum at 22-27, and that aside from Dr. Cosman's opinion, sufficient evidence in the record supports ALJ Devlin's determination that Plaintiff retains the RFC for substantial gainful employment.  *Id.* at 27-29.  Because Plaintiff challenges only ALJ Devlin's determination of Plaintiff's RFC which is predicated on discounting Dr. Cosman's October 3, 2017 opinion, AR at 827-27, in favor of Dr. Boehlert's opinion, AR at 435-38, particularly with regard to Plaintiff's vision impairment, the court limits its consideration to whether ALJ Devlin violated the treating physician rule with regard to Dr. Cosman's opinion, and whether the RFC determination is supported by substantial evidence in the record.

For disability benefits claims filed prior to March 27, 2017, an opinion from a treating medical source is entitled to controlling weight so long as the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. . . ."  20 C.F.R. § 404.1527(c)(2).  *See Crowell v. Comm'r of Soc. Sec. Admin.*, 705 Fed. Appx. 34, 35 (2d Cir. 2017) (treating physician's opinion generally entitled to controlling weight when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [ ] not inconsistent with other substantial evidence in the case record.") (citations omitted).  Where, however, an ALJ discounts a treating physician's opinion, the ALJ must set forth "good reasons" for doing so.  *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  The failure to provide good reasons for rejecting a treating physician's opinion is grounds for remand.

*Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician opinion and we will continue remanding when we encounter opinions from ALJ's [*sic*] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.").

In the instant case, on October 3, 2017, Dr. Cosman reported he has treated Plaintiff every four months since 2006 for aniridia, glaucoma secondary to aniridia, aphakia, loss of right eye, and nystagmus, that Plaintiff has a prosthesis in her right eye and visual acuity in her left eye could not be corrected better than 20/70.  AR at 827.  Dr. Cosman opined Plaintiff's prognosis was "guarded" and that Plaintiff may be legally blind within five years.  *Id*.  Dr. Cosman described Plaintiff's eye impairment as a "moderate to severe impairment," with Plaintiff rarely able to perform activities requiring near acuity, far acuity, or depth perception, occasionally perform activities requiring accommodation, or field of vision, but could frequently perform activities requiring color vision.  *Id*. at 828.  Plaintiff would have difficulty walking up and down stairs.  *Id.*  Dr. Cosman continued that eye irritation and tearing caused by performing visual tasks in excess of 15 minutes would require Plaintiff take 15 minute breaks four to five times during a workday, which would frequently interfere with Plaintiff's attention and concentration needed to perform even simple work tasks.  *Id*. at 829.  Dr. Cosman further opined Plaintiff "has poor vision compounded by frequent eye pain and discomfort [that] is likely to get worse over time," and that although Plaintiff's symptoms have been present since September 1, 2008, "they have worsened . . . ."  *Id*. at 829.  This is consistent with Disability Certificates in the record completed by Dr. Cosman on

June 10, 2015, indicating Plaintiff has been "totally incapacitated" by her vision impairment since June 6, 2011, AR at 770, and by Dr. Siebold on April 28, 2016, indicating Plaintiff has been "totally incapacitated" by her vision impairment since June 2010.  AR at 771.  ALJ Devlin granted Dr. Cosman's opinion "some weight," particularly with regard to Plaintiff's vision acuity, but found that insofar as Dr. Cosman opined Plaintiff would need to take frequent 15 minute breaks to deal with eye irritation and tearing, other evidence in the record established Plaintiff's tearing and irritation has been alleviated with conservative treatment methods such as medication, prescription eye drops, and the shunt.  AR at 531-32.  Accordingly, ALJ Devlin discounted this portion of Dr. Cosman's opinion, as well as the Disability Certificates completed by Dr. Cosman on June 10, 2015, and Dr. Siebold on April 28, 2016.  *Id.*

Although ALJ Devlin explains he discounted Dr. Cosman's opinion because other medical evidence in the record establishes Plaintiff's issues with dryness, irritation, and pain in her left eye were resolved, ALJ Devlin fails to point to the evidence supporting this statement.  Moreover, other evidence in the record establishes Plaintiff's issues with her dryness, irritation, and pain in her left eye continued.  *See, e.g.*, AR at 810-12 (Dr. Siebold reporting on December 11, 2015 Plaintiff presented with "severe" eye pain); 824 (Dr. Cosman reporting that at July 5, 2017 examination, Plaintiff's chief complaint was "dry eyes/sandpaper feeling").  Further, although Plaintiff sometimes reported some alleviation of these symptoms, *see, e.g.*, AR at 511 (May 2, 2012 examination by Dr. Cosman who reports since the surgical implantation of the shunt, Plaintiff's pain has "dissipated slightly"), other evidence in the record establishes Plaintiff's eye drops and medications were frequently adjusted to address her symptoms.  *See, e.g.*, AR at 782

(January 11, 2017 examination by Dr. Cosman who reports continuing needing to monitor Plaintiff's eye pressure and adjust Plaintiff's medications for eye pain). Moreover, Plaintiff's dry eyes and pain constituted an impediment that V.E. Blythe specifically testified would render Plaintiff incapable of all work.  AR at 575. Accordingly, ALJ Devlin's determination that Plaintiff's issues with dryness, irritation, and pain in her left eye were resolved is not supported by substantial evidence in the record; rather, at best the record establishes Plaintiff's symptoms of dryness, irritation, and pain in her left eye continue, albeit worse at some times than at others.

Nevertheless, on the Disability Certificate prepared by Dr. Cosman on June 10, 2015, Dr. Cosman indicates Plaintiff has been disabled since June 6, 2011, AR at 770, *i.e.*, after Plaintiff's last date insured for purposes of SSDI, and the earliest date for which substantial evidence in the record supports disability and a disability date which Defendant does not dispute.  *See Clemente v. Bowen*, 646 F.Supp. 1265, 1273-74 (S.D.N.Y. 1986) (adjusting date of disability benefits award as determined by the ALJ to earlier date which reviewing judge found was supported by substantial evidence in the record).  Accordingly, Plaintiff is entitled to SSI benefits which should be calculated beginning June 6, 2011.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is GRANTED; Defendant's Motion (Dkt. 13) is DENIED; the matter is remanded to the Commissioner for calculation of benefits as of June 6, 2011.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:      August 17th, 2020
            Buffalo, New York